UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| CHERYL D. PACE | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | 1:05-cv-338 |
| | ) | |
| JO ANNE B. BARNHART, | ) | JUDGE CARTER |
| Commissioner of Social Security | ) | |
|     Defendant | ) | |

MEMORANDUM

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

This action is before the court upon the plaintiff's *pro se* Motion for summary judgment (Doc. No. 10) and the defendant's Motion for Summary Judgment (Doc. No. 13). The plaintiff is seeking a remand of this matter pursuant to Sentence Six of 42 U.S.C. § 405(g).

For the reasons stated herein, the decision of the Commissioner shall be AFFIRMED.

Plaintiff's Age, Education and Past Work Experience

The plaintiff was born in 1957, and has a ninth grade education. She previously worked as a nurse's aid and a machine operator (Tr. 327, 344). She alleged an inability to work due to severe mood swings (bipolar), hallucinations, nervousness (anxiety), and shoulder disorders (Tr. 91).

Applications for Benefits

Plaintiff filed an application for disability insurance benefits on July 19, 2001, alleging she became disabled on August 1, 2000, due to mental illness and shoulder disorders (Tr. 87-99).

Her application was denied initially (Tr. 64-67) and upon reconsideration (Tr. 60-61). Subsequent to the June 2003 administrative hearing, Administrative Law Judge (ALJ) Douglas J. Kile found plaintiff retained the residual functional capacity to perform a significant range of light work provided that she do no work requiring frequent overhead motions with the left arm or requiring exposure to excessive vibration; she was also limited to work that did not require more than simple instructions with frequent public contact or exposure to excessive job stress (Tr. 28-39). The ALJ considered the plaintiff's residual functional capacity and the vocational expert's testimony, and found she could perform a significant number of jobs existing in the economy (Tr. 38). Thereafter, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Tr. 6-9). Plaintiff, appearing *pro se*, initiated this civil action for judicial review of the final denial of benefits pursuant to 42 U.S.C. § 405(g).

Standard of Review - Findings of the ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that she cannot return to her former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y*

of *Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

"This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

After consideration of the entire record, the ALJ made the following findings:

> 1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.
>
> 2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7. The claimant has the following residual functional capacity: to lift and carry 20 pounds occasionally and 10 pounds frequently, and to sit or stand/walk each for as many as 6 to 8 hours, provided she do no work requiring frequent overhead motions with the left arm, or more than simple instructions, or frequent public contact, or exposure to excessive vibration or excessive job stress.

8. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

9. The claimant is a "younger individual" (20 CFR § 404.1563).

10. The claimant has "a limited education" (20 CFR § 404.1564).

11. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

12. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13. Although the claimant's exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rule 202.18 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs appear in the body of this decision.

> 14. The claimant was not under a "disability," as defined in the
> Social Security Act, at any time through the date of this decision
> (20 CFR § 404.1520(f)).

(Tr. 38).

## Issues Presented

Plaintiff raises the issue of whether the ALJ erred in adequately considering plaintiff's psychological problems as noted in Appeals Attorney Dorothy Stulberg's Statement.

## Relevant Medical Evidence

Plaintiff alleges disability as of August 1, 2000, after which time she worked fewer hours due to nerves, chemical imbalance and arthritis in her shoulder (Tr. 91).

**Psychological Records Dated Prior to Plaintiff's Alleged Onset of Disability:**

Plaintiff was treated by psychiatrist Dr. Miller from August 1999 through May 2000 (Tr. 160-71). Treatment notes of September 1999 document Plaintiff's "history of anxiety and depression. She is now back in the work force and productive, due to the positive effect of Zoloft. Formulary medications such as Klonopin, Xanax and Ativan create dependencies and decrease mental acuity, especially while driving" (Tr. 161). Dr. Miller ceased treatment with Plaintiff after being threatened by her husband, Jerry Pace (Tr. 163, 318).

**Psychological Records Following Plaintiff's Alleged Onset of Disability:**

In September 2000, Plaintiff was admitted for two days to St. Mary's Hospital due to a drug overdose (Tr. 172-79). She was discharged in stable condition with prescriptions for Depakote and Serzone, and was to follow-up at the Overlook Center (Tr. 173).

From February through August 2001, Plaintiff was treated at Peninsula Outpatient Centers (Tr. 198-219). In May 2001, Plaintiff reported decreased hallucinations; she felt

5

nervous, but stated that she had always been that way (Tr. 203). Plaintiff admitted to occasional use of beer and marijuana. *Id*. In June 2001, the report indicates plaintiff continued to smoke marijuana. *Id*.

In September 2001, Plaintiff underwent a consultative psychological examination by Dr. Porter (Tr. 188-94). Plaintiff reported that she had not used alcohol or drugs for a year (Tr. 190). Dr. Porter assessed Plaintiff's work-related limitations. He found that her ability to understand and remember was somewhat limited due to depression, anxiety and panic attacks (Tr. 193). Plaintiff's ability to sustain concentration and persistence were somewhat limited. *Id*. Her social interaction appeared to be significantly limited. *Id*. Finally, Dr. Porter opined that Plaintiff's ability to adapt appeared markedly limited. *Id*.

On November 9, 2001, state agency psychologist Dr. Lawrence reviewed the record evidence and noted only moderate limitations for work (Tr. 250-51). Dr. Lawrence assessed Plaintiff's mental residual functional capacity and concluded that Plaintiff could understand, remember and carry out simple one and two-step, repetitive detailed, but not complex instructions (Tr. 252). She also found that Plaintiff would have difficulty, but could attend to and persist with simple, repetitive tasks, maintain simple schedules and routines, and tolerate limited contact with co-workers. She also concluded that Plaintiff would have difficulty, but could relate to supervisors, co-workers and the general public and maintain acceptable behavior. Finally, Dr. Lawrence found that Plaintiff could adapt to gradual, infrequent changes. *Id.*

On November 21, 2001, state agency reviewing psychiatrist, Dr. Robbins, reviewed the medical evidence, including records of: Peninsula Outpatient Center (Sept. 2000 - Aug. 2001), St. Mary's Medical Center (Sept. - Oct. 2000), Miller and Associates (Aug. 1999 - May 2000),

6

Cherokee Psychological Consultative examination (Sept. 2001), and Dr. Summer's Consultative examination (Sept. 2001) (Tr. 52). Specifically, although Plaintiff alleged mood problems, hallucinations and nervousness in dealing with others, records showed that she was able to communicate with others, act in her own interests and perform most ordinary activities (Tr. 49). Further, although Plaintiff alleged left arm pain with past shoulder surgery pain, the evidence showed that she was able to stand, move about, and use her arms, hands and legs in a satisfactory manner. In April 2002, Dr. Swan reviewed the medical evidence, including updated records from Cherokee Health Systems through January 2002, and affirmed Dr. Robbins' determination of November 2001 (Tr. 47).

In May 2002, Plaintiff began treating with psychiatrist Dr. Zemichael (Tr. 278-84). In July 2002, Dr. Zemichael noted it was of "great importance" that Plaintiff "follow strict sobriety," warning that she could not take medications while using drugs and alcohol (Tr. 282). By October 2002, Dr. Poe, another staff psychiatrist, assessed that Plaintiff's bipolar disorder, mixed with psychotic features, was in partial remission (Tr. 281). Dr. Poe noted Plaintiff's concerns that she was worried about her husband dying and she was having dreams about death as well. *Id*. She recommended a five-part plan for Plaintiff. Plaintiff was to continue medications as prescribed by Dr. Zemichael; discontinue Buspar; given a trial of Ativan; encouraged to access her spiritual resources as a way to help cope with her anxiety, specifically about death; and follow up in four weeks with Dr. Zemichael. *Id*. In November 2002, Plaintiff reported that she was doing better with her medications (Tr. 280). She denied any psychotic symptoms or suicidal/homicidal ideation. *Id*.

Dr. Zemichael's treatment notes of January 2003 reflected Plaintiff's reports that her medications were helpful - without any side effects (Tr. 279). She denied any psychotic symptoms or suicidal/homicidal ideation. *Id*. By May 2003, Plaintiff reported that her medications were helpful, and psychotic symptoms had subsided (Tr. 278).

**Physical Impairment Records Following Plaintiff's Onset of Disability**:

Plaintiff saw an orthopaedic surgeon, Dr. MacNaughton, for evaluations in October and December 2000, due to complaints of shoulder pain (Tr. 180-82). He diagnosed persistent left subacromial impingement syndrome/bursitis in Plaintiff's left shoulder (Tr. 180). In January 2001, Dr. McNaughton successfully performed diagnostic arthroscopy of the left shoulder with subacromial decompression/acromioplasty (Tr. 183-87).

On September 12, 2001, claimant saw Dr. Summers for a consultative examination (Tr. 195-97). She reported applying for disability benefits due to problems with her shoulder, she described a one-year history of persistent pain and limited use of her left shoulder joint. On examination, Dr. Summers noted evidence of her previous shoulder surgery, but Plaintiff maintained a full range of motion in all joint areas. Dr. Summers specifically noted that he could "find no objective evidence to support impairment" at that time (Tr. 196).

In April 2002, reviewing physician Dr. Schull analyzed the medical evidence and concluded that Plaintiff's physical impairment, shoulder pain post surgery, was not severe (Tr. 277). He noted that there were no objective findings to support Plaintiff's complaints of pain *Id*.

<u>Vocational Evidence</u>

Katharine Bradford, M.Ed. testified as a vocational expert at the administrative hearing after listening to Plaintiff's testimony and reviewing the record (Tr. 344-50). The ALJ asked her

8

a hypothetical question concerning whether there were any jobs in the economy that could be performed by an individual of Plaintiff's age, education, and work experience (Tr. 345). His question assumed the individual was able to do light work, provided that she do no work requiring frequent overhead motions with the left arm or requiring exposure to excessive vibration; she was also limited to work that did not require more than simple instructions, frequent public contact or exposure to excessive job stress (Tr. 345). The ALJ further asked the vocational expert to assume impairments including depression, bipolar disorder, mental anxiety, left shoulder impairment, avoidant personality disorder, and obesity. *Id*. The vocational expert testified that such an individual could perform light work, including 1300 jobs in the regional economy of Knoxville and 187,000 jobs in the national economy, such as a production inspector, hand packer, and grader/sorter (Tr. 345-46). The ALJ posed a second, more conservative hypothetical question to the vocational expert. The ALJ asked whether there were any jobs that an individual with the above limitations, who was further restricted to sedentary work, could perform (Tr. 346). The vocational expert testified that such an individual could perform sedentary work, including 1280 jobs in the regional economy of Knoxville and 134,000 jobs in the national economy, such as a small products assembler, small products inspector and general production worker (Tr. 345-46).

Evidence Submitted to the Appeals Council

Plaintiff submitted additional evidence to the Appeals Council with her request for review of the ALJ's decision, consisting of a letter from Dr. Wright dated September 12, 2005 (Tr. 285-86), treatment notes from the Fortwood Center from October 2004 through September

9

2005 (Tr. 287-313), and a brief from Plaintiff's attorney, Ms. Stulberg, filed in September 2005 (Tr. 314-23).

Analysis

The ALJ carefully considered all the record evidence and found Plaintiff was able to perform a significant range of light work, provided that she perform no work which required frequent overhead motions with the left arm or required exposure to excessive vibration. She was also limited to work that did not require more than simple instructions, frequent public contact or exposure to excessive job stress (Tr. 31-39). The ALJ relied on vocational expert testimony, in response to his hypothetical question reflecting Plaintiff's credible limitations, and concluded Plaintiff could perform a significant number of jobs in the national economy and was, therefore, not disabled (Tr. 37). Because I conclude his decision is supported by substantial evidence, the denial of benefits must be affirmed by this Court.

In evaluating the evidence, the ALJ properly weighed the numerous medical source opinions and explicitly found "no examining, consulting or treating medical source describ[ed] the claimant as having disabling work-related limitations at any time relevant herein" (Tr. 35).

The ALJ considered all the record evidence, including the record physician opinions, in assessing Plaintiff's residual functional capacity and evaluating the credibility of her allegations. The ALJ concluded that Plaintiff's allegations of limitations that would preclude the ability to work were not fully credible (Tr. 35, 38). The ALJ's residual functional capacity finding is supported by substantial evidence in the record as a whole.

Plaintiff primarily contends that the ALJ committed reversible error in assessing her psychological impairment. Although the record contains allegations of both physical and mental

limitations, Plaintiff does not directly challenge the ALJ's assessment of her physical abilities (Plaintiff's Brief at ¶ 2). Specifically, Plaintiff argues that the ALJ erred in failing to account for her symptoms as described in her (then) representative's statement on her behalf, filed in September 2005 with the Appeals Council (Tr. 314-23). *Id*.

The ALJ noted his "careful consideration of the entire record," including Plaintiff's passing out at work (Tr. 35, 37, 259). He also specifically considered Plaintiff's claims that she could not handle job stress (Tr. 35, 190). After reviewing the record evidence, including Plaintiff's hearing testimony, the ALJ reasonably concluded that despite her impairments Plaintiff was able to perform a range of light work subject to certain limitations. Those limitations specifically accommodated Plaintiff's credible allegations of debilitating symptoms; she was limited to work with simple instructions, less than frequent public contact, and which did not create excessive job stress (Tr. 36).

Plaintiff's counsel asserted in her statement to the Appeals Council, that Dr. Poe's opinion did not constitute substantial evidence, seemingly because Dr. Poe mentioned prayer (Tr. 322). The ALJ carefully considered all of the medical evidence, including Dr. Poe's singular treatment note (Tr. 34, 281). The ALJ did not grant controlling weight to Dr. Poe's opinion, but mentioned it in his decision, noting that she had assessed Plaintiff's "bipolar disorder as being in partial remission" (Tr. 34, 281).

In May 2002, Plaintiff began treating with psychiatrist Dr. Zemichael (Tr. 278-84). Of Plaintiff's six visits to Dr. Zemichael's office, she saw Dr. Poe, another staff psychiatrist, on one occasion. By October 2002, Dr. Poe assessed that Plaintiff's bipolar disorder was in partial remission (Tr. 281). Dr. Poe noted Plaintiff's concerns that she was worried about death and

11

dreaming about it. *Id*. She recommended a five-part plan for Plaintiff. Plaintiff was to continue medications as prescribed by Dr. Zemichael; discontinue Buspar; given a trial of Ativan; encouraged to access her spiritual resources as a way to help cope with her anxiety, specifically about death; and follow up in four weeks with Dr. Zemichael. *Id*. Plaintiff asserts that her "psychological problems [] cannot be treated through prayer" (Tr. 322). This argument ignores the fact that the five-part plan describes a range of treatment for Plaintiff's many complaints. There was no suggestion by Dr. Poe that prayer would treat her bipolar disorder. Rather, in response to Plaintiff's reported concerns about death and dying, Dr. Poe suggested spiritual resources "as a way of helping her cope with her chronic anxiety and her anxiety about death" (Tr. 281). This suggestion was in the context of three additional recommendations concerning psychotropic medications, and another which recommended follow up with Dr. Zemichael. *Id*. Plaintiff's argument distorts the overall treatment plans prescribed by Drs. Zemichael and Poe. In fact, in each of her visits, Plaintiff's treatment plans were extensive and included between five and nine different recommended actions, including medication changes, return visits, and advice to stay sober while taking her medication (Tr. 278-84).

I conclude Dr. Poe's treatment recommendation was appropriate, and the ALJ appropriately considered it along with all of the medical source opinions in reaching his conclusion.

In his decision, the ALJ addressed Plaintiff's credibility. Although not specifically challenged by Plaintiff, the ALJ's credibility finding was proper and he reasonably considered Plaintiff's credibility in assessing her residual functional capacity.

In evaluating Plaintiff's credibility, the ALJ carefully considered the objective medical evidence, as well as her appearance and testimony at the hearing. The ALJ also considered particularly Plaintiff's symptoms and complaints of pain in accordance with the evaluation factors as set forth in SSR 96-7p and 20 C.F.R. § 404.1529 (Tr. 35-36). For example, he considered her daily activities, course of medical treatment, and use of medication. In fact, Plaintiff admitted, and the ALJ specifically noted, her use of "psychotropic medications has brought a significant reduction of hallucinations and/or other psychotic symptoms" (Tr. 35).

The ALJ properly considered Plaintiff's daily activities in evaluating her credibility. She reported reading nonfiction and horror stories as well as watching television four hours per day, "connoting a significant capability to maintain concentration and attention" (Tr. 35, 107). Plaintiff was also able to prepare her own meals, take care of her dogs, and perform light household chores, including sweeping and mopping about three times per week (Tr. 106, 109). She also reported traveling to Georgia monthly to visit her mother (Tr. 108). Plaintiff's activities of daily living indicate that she could perform a range of light work and belie her claims of disabling symptoms.

The ALJ also recognized Plaintiff's testimony regarding her functional abilities, noting the objective medical evidence did not demonstrate the degree of severity sufficient to produce the limitations she alleged (Tr. 36). For example, although she described disabling panic attacks, no medical source corroborated their presence. *Id*. The ALJ also considered several inconsistencies in Plaintiff's testimony and other record evidence as detracting from her credibility (Tr. 35-36). He specifically noted her "inconsistent, even contradictory, accounts" of her sobriety and inability to work (Tr. 36). For example, clinical data showed Plaintiff

acknowledged using drugs in May and June 2001, only to claim a year of abstinence three months later (Tr. 34, 190, 202-03). Yet, Plaintiff now argues she did not have a chance to review and correct any untruthful statements contained within her own medical records (Pl. Br. at ¶ 1). It is unclear which statements are now claimed to have been untrue but there were inconsistencies. The inconsistencies noted by the ALJ undermine her overall credibility and the veracity of her subjective complaints.

From all this evidence, the ALJ concluded that Plaintiff's allegations of limitations that would preclude the performance of a range of light level work were not fully credible. The ALJ applied the proper criteria in reaching this conclusion. Substantial evidence supports his reasoning. The ALJ considered the requisite factors, including Plaintiff's activities of daily living and course of medical treatment, and reasonably concluded her complaints of disabling pain were not fully credible. The ALJ's credibility finding is entitled to deference by this reviewing Court. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."). The ALJ considered all the record evidence, including the record physician opinions, in assessing Plaintiff's residual functional capacity and evaluating her credibility and reasonably accommodated her functional limitations. I conclude The ALJ's residual functional capacity finding is supported by substantial evidence in the record as a whole.

<u>Vocational Evidence</u>

At the administrative hearing, the ALJ posed a hypothetical question to Ms. Bradford, the vocational expert, that assumed an individual of Plaintiff's age, education, and vocational

14

background, who could perform a range of light work, provided that she do no work requiring frequent overhead motions with the left arm or requiring exposure to excessive vibration; she was also limited to work that did not require more than simple instructions, frequent public contact or exposure to excessive job stress (Tr. 345). The ALJ further asked the vocational expert to assume impairments including depression, bipolar disorder, mental anxiety, left shoulder impairment, avoidant personality disorder, and obesity. *Id*. The vocational expert's opinion was that there were jobs at the light and sedentary level which plaintiff could perform. Her testimony is set out in more detail on page 9 of this memorandum.

The ALJ reasonably relied on Ms. Bradford's testimony in finding Plaintiff could perform a significant number of jobs in the national economy. The ALJ's hypothetical question accurately reflected Plaintiff's credible limitations, the ALJ was not required to accept Plaintiff's symptoms which were unsupported by the record evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (*citing Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987). Since the ALJ relied on vocational expert testimony in response to a hypothetical question which accurately reflected Plaintiff's credible limitations, his finding that Plaintiff was not disabled because she could perform a significant number of jobs in the national economy was supported by substantial evidence. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

<u>Remand Pursuant to Sentence Six of 42 U.S.C. § 405(g)</u>

Plaintiff submitted additional evidence to the Appeals Council with her request for

review of the ALJ's 2003 decision, consisting of a letter from Dr. Wright dated September 12, 2005 (Tr. 285-86), treatment notes from the Fortwood Center from October 2004 through September 2005 (Tr. 287-313), and a brief from Plaintiff's attorney, Ms. Stulberg, filed in September 2005 (Tr. 314-23). Where, as here, the Appeals Council denies review of the ALJ's decision, that decision becomes the final decision of the Commissioner subject to review (Tr. 6-9). Plaintiff's additional evidence was not, therefore, part of the record on which the Commissioner's decision was based, and, consequently, it is not part of the record for the purpose of substantial evidence review.

Social Security regulations provide that "if new and material evidence is submitted, the Appeals Council shall consider the additional evidence <u>only where it relates to the period on or before the date of the administrative law judge hearing decision</u>. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision." (Emphasis added). 20 CFR § 416.1470(b). Here, the additional evidence appears to relate to a period <u>after</u> the ALJ's decision. As such, this evidence, which purports to demonstrate a continuation of Plaintiff's condition after the period considered by the ALJ, is not time-relevant, and therefore not material. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). Here, Plaintiff has submitted a physician's statement dated September 2005. Well after the relevant period, Dr. Wright opines that Plaintiff has Dissociative Identity Disorder and Bipolar Disorder (Tr. 286). In fact, this therapy did not even begin until two months after the ALJ's decision of August 2003. The letter opinion is dated more than two years after the decision of

the ALJ (Tr. 285, 39). If the letter is a reflection that Plaintiff's condition has deteriorated then the proper course would be file a new claim based on that changed condition.

Even if the Court were to consider the additional evidence as somehow related to the relevant period, it could only be considered for purposes of a remand pursuant to the Sixth Sentence of 42 U.S.C. § 405(g). *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). 42 U.S.C. § 405(g) provides a court may order new evidence to be taken before the Commissioner on remand (without ruling on the merits), but only upon a showing that the new evidence is material and there is good cause for the failure to incorporate such evidence into the record in prior proceedings. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 206 (6th Cir. 1990). The burden of showing the appropriateness of a remand is on the claimant. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

In the present case, I find that a sentence-six remand is not warranted by the evidence submitted, because it is not material. There is no reasonable probability that the ALJ would have changed his decision in reliance upon these records because they are not material. As the Commissioner argues, Dr. Wright's letter summarizes his diagnoses of Plaintiff and largely reflects her subjective complaints reported over their two-year course of psychotherapy, all after the date of the decision in this case, rather than containing any objective evidence (Tr. 285-86). Further, while Dr. Wright initially describes numerous personalities, he reports success at integration. *Id*. Even if the Fortwood treatment notes reflect reports consistent with the problems noted in the relevant period, there is no reasonable probability that the ALJ would have changed his decision in reliance upon these records because they relate to a period not relevant to the decision. Remand is not warranted pursuant to the Sixth Sentence of 42 U.S.C. § 405(g).

17

Conclusion

Having carefully reviewed the entire administrative record and the briefs of the parties, I conclude there is substantial evidence in the record to support the findings of the ALJ and decision of the Commissioner denying the plaintiff's applications for benefits.

A judgment will enter in accordance with this memorandum AFFIRMING the denial of benefits to the plaintiff and DISMISSING this action.

                                      s/William B. Mitchell Carter
                                      UNITED STATES MAGISTRATE JUDGE